UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE WILLIAMS,<br>1901 D Street, S.E.<br>Washington, DC 20003<br><br>      Plaintiff,<br><br>   v.<br><br>ROBERT A. DIXON, *in his official capacity as United States Marshal for the Superior Court of the District of Columbia*<br>500 Indiana Avenue, N.W., Room C-120<br>Washington, D.C. 20001<br><br>      Defendant. | No. 22-cv-____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of Fourth and Fifth Amendment rights)

**INTRODUCTION**

1. In this civil rights action, Tyrone Williams asserts his right not to endure baseless probes of his testicles, buttocks, and anus by government agents.

2. The United States Marshals Service (USMS) has a blanket search policy that requires marshals at the District of Columbia Superior Court to pull down the pants of men arriving at the courthouse from detention at the D.C. Jail and manually probe detainees' testicles and inside their buttocks, through their underwear, even though these detainees have recently undergone a visual body cavity search at the D.C. Jail. Mr. Williams seeks immediate relief to prevent U.S. Marshal Dixon from enforcing this harmful, degrading, and unnecessary policy.

3. Three separate courthouse deputy marshals, each on a different occasion and each acting under USMS policy, pressed into Mr. Williams's anus, through his boxers, and grabbed and

yanked on Mr. Williams's testicles, hard enough to cause both immediate and lasting pain. The searches have inflicted on Mr. Williams immediate, lasting, and penetrating pain in his anus and testicles, and escalating and severe emotional distress. He files this lawsuit to seek injunctive relief from this USMS policy and future unconstitutionally invasive searches.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the Constitution and laws of the United States.

5. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of occurred in this District.

## PARTIES

6. Tyrone Williams is fifty-two years old and is detained, pretrial, at the Central Detention Facility of the D.C. Jail.

7. Defendant Robert Anthony Dixon is the United States Marshal for the Superior Court of the District of Columbia. He is sued in his official capacity.

## FACTS

**The D.C. Jail's Policy of Conducting Visual Body Cavity Searches**

8. The D.C. Jail has a policy of conducting visual body cavity searches of all men detained in the Jail upon their departure from the Jail to the courthouse.

9. Each visual body cavity search occurs in the Receiving and Discharge Room, located in the basement of the Jail.

10. The visual body cavity search does not involve any touching by correctional officers of the detainees. Instead, detainees are searched, one by one, across a table from at least one correctional officer, who instructs the detainee on what to do during the search.

11. The correctional officer first instructs the detainee to take off all his clothes and shoes, piece by piece, and to place each item on the table that separates the detainee from the officer. None of the jail-issued clothing contains pockets, except for the shirt, which contains a small breast pocket. As each piece is placed on the table, the correctional officer shakes and searches the item before moving onto the next item.

12. Once the detainee is completely naked, the officer instructs him to:

   a. Lift his hands above his head and push his legs apart, so that the detainee is standing in a spread-eagle stance;

   b. Lift his genitals and penis, so that the officer can look underneath;

   c. Bend and spread his buttocks so that the officer can visually inspect inside his anal cavity;

   d. Squat and cough, to cause excretion of any contraband hidden in the anal cavity;

   e. Lift his tongue, so that the officer can visually inspect his mouth; and

   f. Run his hand through his hair to cause any contraband in the hair to fall out;

The detainee then reclothes.

13. Before the detainee departs from the Jail for a courthouse, an officer shackles the detainee with leg irons across the feet, a belly chain around the waist, and handcuffs, which are attached to the belly chain.

### The United States Marshal Service's Manual Search Policy

14. The USMS has a policy of manually searching detainees upon their arrival at the D.C. Courthouse at 500 Indiana Avenue, N.W. This policy has been relayed orally to one of undersigned counsel by Ms. Grace Rivera, a USMS supervisory official.

15. Ms. Rivera states that it is USMS policy for courthouse marshals to search detainees in a basement corridor of the courthouse. A marshal instructs the detainee to face the wall and the detainee's pants are pulled down so that he is standing in only his shirt and underwear. The marshal uses his hands to search the detainee's arms, chest, and legs. When the marshal reaches the groin area, the marshal uses his hands to swipe around the genitals and inside the buttocks, through the detainee's underwear.

16. Other marshals and detainees are usually present when the search occurs and can watch the search occurring.

17. The USMS is aware that detainees have already undergone a visual body cavity search at the D.C. Jail, prior to their departure from the Jail. The USMS is aware that detainees are shackled, hand and foot, before departing the Jail and that they are under continuous supervision during their transport to the courthouse.

**The Searches of Plaintiff Tyrone Williams**

18. Since being detained at the D.C. Jail, Mr. Williams has been to Superior Court for court appearances on three occasions: November 3, 2020; October 18, 2021; and February 10, 2022.

19. On each occasion, before he left the Jail, Mr. Williams was subjected to the visual body cavity search procedure detailed in paragraphs 8 to 13 of this complaint. After the search procedure concluded, he was shackled by a correctional officer with leg irons, a belly chain, and handcuffs that attached to the belly chain. A correctional officer then escorted him, along with other shackled detainees, to a van parked outside of the Jail.

20. Under D.C. Department of Corrections policy, the van is searched by correctional officers for contraband before and after each transport.

21. On each occasion, after Mr. Williams boarded the van, correctional officers supervised him as he was driven to the courthouse. On two occasions—October 18, 2021, and February 10, 2022—other shackled detainees were also transported in the same van to the courthouse. On November 3, 2020, Mr. Williams was the only detainee on the van that transported him to the courthouse. The van ride, on each occasion, was approximately 15 minutes long.

22. On each occasion, upon arriving at the courthouse, Mr. Williams and any other detainees present were escorted in shackles by either marshals or correctional officers, or both, to a long corridor in the courthouse. Each time, the walk took a couple of minutes to get from the van to the corridor.

23. On each occasion, shortly after arriving at the courthouse, Mr. Williams was searched by a courthouse marshal. He was searched by a different marshal on each occasion. Each time, several marshals, correctional officers (or both) were present during the search and could watch the search unfold. On two occasions—October 18, 2021 and February 10, 2022—other shackled detainees were also present in the corridor during the search. On November 3, 2020, Mr. Williams was the only detainee in the corridor during the search.

24. Each time that Mr. Williams was searched by a courthouse marshal, Mr. Williams remained shackled throughout. The marshal first took off Mr. Williams's shoes, and then slid Mr. Williams's pants down to his ankles, so that Mr. Williams was wearing only his shirt and his boxers. He instructed Mr. Williams to face the wall and to spread his feet apart, at which point he proceeded to move his hands up and down Mr. Williams's arms, back, waist, and legs.

25. Each time, when the marshal reached Mr. Williams's boxers, the marshal pushed two fingers into Mr. Williams's anus, through his boxers, and so violently that the boxers jammed into Mr. Williams's anus under the pressure. The marshal then moved to Mr. Williams's testicles,

at which point he grabbed the testicles and yanked downwards. During these searches, Mr. Williams experienced immediate shooting pain in his testicles.

26. On each occasion, during or right after the search, Mr. Williams said something to the marshal, such as "why you touching me like that? I have already been searched, what could I possibly have on me?" The marshal told him in response to face forward and remain silent.

27. The Marshals have never found contraband on Mr. Williams.

**Grace Rivera's Inspection of the Search of Mr. Williams on February 10, 2022**

28. On February 4, 2022, in advance of Mr. Williams's February 10 court date, one of undersigned counsel contacted the USMS for the D.C. Superior Court to request that a supervisor monitor Mr. Williams's arrival at the courthouse and ensure that the marshals refrain from searching him inappropriately. Undersigned counsel was directed to USMS supervisor Grace Rivera.

29. Ms. Rivera monitored the search of Mr. Williams that occurred on February 10, 2022. She did not tell any of the marshals why she was observing the search.

30. After Ms. Rivera observed the search, she called one of undersigned counsel and informed him that nothing inappropriate had occurred. She stated that Mr. Williams's search occurred in a public corridor where every marshal on duty and every detainee who came to the courthouse from the D.C. Jail with Mr. Williams was present. Ms. Rivera further states that a marshal patted down the outer layer of Mr. Williams clothing; Mr. Williams's pants were lowered so that he was standing in his underwear. Then, according to Ms. Rivera, the marshal searched Mr. Williams's private areas. Ms. Rivera further stated that Mr. Williams complained during the search.

31. This search, according to Ms. Rivera, comported with USMS policy that requires that detainees with their pants down submit to a swipe of the groin area and inside their buttocks.

**Mr. Williams's Injuries**

32. After the first time that a marshal searched Mr. Williams in the invasive way described in paragraphs 23 through 26, November 3, 2020, Mr. Williams's testicles and anus hurt for the rest of the day. The incident also caused him mental distress; Mr. Williams suffered persistent racing thoughts of the incident that accumulated into an intense anxiety because he knew that he had to return to court, and he did not want to suffer through a similar search procedure again.

33. After the second time that a marshal searched Mr. Williams in the invasive way described in paragraphs 23 through 26, on October 18, 2021, Mr. Williams again felt pain in his testicles and anus throughout the day, and again suffered mental distress—this time worse than the time before. Mr. Williams could not shake the incident from his thoughts, nor could get the faces of the marshals out of his head. Because of the two incidents, his depression worsened dramatically.

34. After the third time that a marshal searched Mr. Williams in the invasive way described in paragraphs 23 through 26, on February 10, 2022, he again suffered shooting pain in his testicles. Mr. Williams started crying in front of his lawyer and could not concentrate on the court hearing, nor understand the proceedings. His testicles and anus continued to be in pain for days afterward, so much so that he could not sit during that time period. Due to the pain in his testicles, he filed a medical complaint at the D.C. Jail. As of March 16, 2022, he had not received a reply to the complaint. The search again inflicted emotional distress on Mr. Williams. Between the search (February 10, 2022) and February 15, 2022, he had little appetite and skipped four

7

meals. He was also unable to sleep well or to concentrate because all the faces of the marshals who had searched him kept running through his mind. When he told his daughter and wife about the invasive search, he started to cry. Due to the severe emotional toll inflicted on him by the searches, he filed a request for treatment with the psychiatrist at the D.C. Jail. As of March 16, 2022, he had not received psychiatric treatment in response to that request.

## Application of the USMS Policy to Mr. Bowser

35. Mark Bowser, another man detained at the D.C. Jail pretrial, has experienced the same kind of intrusive searches of his buttocks and testicles at the hands of courthouse marshals on four occasions: one in Fall 2021, one in or around February 2022, and two in March 2022.

36. On each occasion, a marshal initiated the search by pulling Mr. Bowser's pants down to his ankles. His shirt and briefs remained on. When the marshal reached his groin area, he first used his hands to circle Mr. Bowser's upper thigh and repetitively shot his hand up into Mr. Bowser's groin and back down. During this movement, the marshal's gloved hands caught against the skin around Mr. Bowser's groin, pinching and pulling his skin and pubic hair. After repeating the movement on the opposite thigh, the marshal next used one hand to tightly squeeze Mr. Bowser's testicles, while he slipped the other hand again between Mr. Bowser's legs, and shook hard back and forth, slapping his genitals. With that same hand, the marshal shoved several fingers in Mr. Bowser's buttocks and swiped the buttocks by moving his fingers up and down, rubbing Mr. Bowser's anus in the process. These rough movements caused Mr. Bowser to tense up with pain. Although Mr. Bowser was wearing briefs during the searches, the marshal's roughhousing pushed Mr. Bowser's briefs so far into his buttocks that, by end of the searches, Mr. Bowser's buttocks were exposed, his skin became irritated, and he felt as if he were wearing a

thong.  After pulling Mr. Bowser's pants back up, the marshal then used a wand to trace the rest of Mr. Bowser's body.

37.	On each occasion, Mr. Bowser complained, during the search, about the rough way in which the marshal was searching him.  The marshal, and the marshals watching, neither responded nor changed the manner of the search.

38.	During and after the most recent search of his groin area, on March 14, 2022, when Mr. Bowser complained, the marshals in reply teased Mr. Bowser and started making jokes about him.  Mr. Bowser asked for their names and badge numbers, but they refused to give them to him.

### Mr. Williams's Next Court Date

39.	Mr. Williams's next court date is on April 18, 2022.  He dreads going back to the courthouse because he expects to suffer yet a fourth invasive search at the hands of courthouse marshals.

### The Lack of Justification for the USMS Search Policy

40.	Because Mr. Williams underwent a visual cavity search at the D.C. Jail and remained restrained and under supervision at all times between that search and the search conducted by the courthouse marshals, the USMS searches conducted on Mr. Williams were not necessary for any security-related purpose, and there was no justification for the marshals to touch his testicles or reach inside his buttocks through his underwear. *See* Decl. of Arthur Wallenstein ("Wallenstein Decl.") ¶¶ 8, 10, 13-14; Decl. of Gary Raney ("Raney Decl.") ¶ 12.

41.	Visual cavity searches and searches using technological devices are the two most effective ways to detect contraband and weapons.  Wallenstein Decl. ¶ 12; Raney Decl. ¶ 9.  A visual cavity search upon leaving the jail would not only uncover attempts to smuggle contraband

into the courthouse but would also have a deterrent effect, making detainees less likely to try to smuggle contraband from the outset. Wallenstein Decl. ¶ 12.

42. Swiping an individual's buttocks and/or testicles through their underwear will not reveal anything that a visual cavity search won't uncover. *Id.* ¶ 13.

43. Searching detainees' buttocks and/or testicles through their underwear is not part of generally accepted practices or training for law enforcement officers. Wallenstein Decl. ¶ 7; Raney Decl. ¶ 11. Such a search is not proper unless there is a specific reason to believe that the individual possesses contraband. Raney Decl. ¶¶ 10, 11.

44. There is never any justification for law enforcement officers to, through a detainee's clothing, yank a detainee's testicles or use their fingers to press forcefully between a detainee's buttocks or into a detainee's anus. Raney Decl. ¶ 13; Wallenstein Decl. ¶ 11.

## CLAIMS FOR RELIEF

### Claim I: Violation of the Fourth Amendment (USMS Policy)

45. The Fourth Amendment to the United States Constitution protects Tyrone Williams's right to be free from unreasonable searches by government officers.

46. The USMS policy, imposed and/or enforced by Defendant, that requires courthouse marshals to manually probe pretrial detainees' testicles and inside their buttocks, through their underwear, prior to their court appearances and after they have already undergone a visual body cavity search in the D.C. Jail, violates Mr. Williams's Fourth Amendment rights because Mr. Williams's privacy interests in avoiding such an intrusive and degrading search far outweighs the law enforcement interest in performing these searches on individuals who have undergone a visual body cavity search and have then been shackled and under continuous supervision.

47. Mr. Williams faces an imminent risk of irreparable harm from this policy because he is scheduled to return to return to D.C. Superior Court on April 18, 2022, when the policy will again be applied to him.

48. As the U.S. Marshal for the Superior Court of the District of Columbia, Defendant Dixon has the authority to prohibit his officers from continuing to apply the challenged search policy.

### Claim II: Violation of the Fifth Amendment (USMS Policy)

49. The Fifth Amendment to the United States Constitution protects Tyrone Williams's right to due process, which includes the right, as a person detained pretrial and who is presumed innocent, to be free from treatment that amounts to punishment.

50. The USMS policy, imposed and/or enforced by Defendant, that requires courthouse marshals to manually probe pretrial detainees' testicles and inside their buttocks, through their underwear, prior to their court appearances and after they have already undergone a visual body cavity search in the D.C. Jail violates Mr. Williams's due process rights because it is objectively unreasonable.

51. Mr. Williams faces an imminent risk of irreparable harm from this policy because he is scheduled to return to return to D.C. Superior Court on April 18, 2022, when the policy will again be applied to him.

52. As the U.S. Marshal for the Superior Court of District of Columbia, Defendant Dixon has the authority to prohibit his officers from continuing to apply the challenged search policy.

### Claim III: Violation of the Fourth Amendment (Excessive Force)

53. The Fourth Amendment to the United States Constitution protects Tyrone Williams's right to be free from unreasonable searches by government officers.

54. Mr. Williams's Fourth Amendment rights are violated when courthouse marshals, under the control of Defendant Dixon, press into Mr. Williams's anus, through his boxers, and grab and yank on Mr. Williams's testicles, hard enough to cause both immediate and lasting pain. This conduct violates the Fourth Amendment because Mr. Williams has a privacy interest in being free from searches that are unreasonable in manner and excessive in force.

55. The consistency with which these violations have been visited on Mr. Williams and Mr. Bowser shows that it is likely that Mr. Williams will again be searched in this manner before his future court appearances.

56. Mr. Williams faces an irreparable harm from this practice such that there is not an adequate remedy at law.

57. As the U.S. Marshal for the U.S. Marshal Service for the Superior Court of the District of Columbia, Defendant Dixon has the authority to order his officers not to conduct searches in this manner.

**Claim IV: Violation of the Fifth Amendment (Pretrial Punishment)**

58. The Fifth Amendment to the United States Constitution protects Tyrone Williams's right to due process, which includes the right, as a person detained pretrial and who is presumed innocent, to be free from treatment that amounts to punishment.

59. Mr. Williams's due process rights are violated when courthouse marshals, under the control of Defendant Dixon, press into Mr. Williams's anus, through his boxers, and grab and yank on Mr. Williams's testicles, hard enough to cause both immediate and lasting pain. This conduct violates due process because it is objectively unreasonable.

60. The consistency with which these violations have been visited on Mr. Williams and Mr. Bowser shows that it is likely that Mr. Williams will again be searched in this manner before his future court appearances.

61. Mr. Williams faces an irreparable harm from this practice such that there is not an adequate remedy at a law.

62. As the U.S. Marshal for the Superior Court of District of Columbia, Defendant Dixon has the authority to order his officers not to conduct searches in this manner.

## REQUESTED RELIEF

Wherefore, Mr. Williams respectfully requests that the Court:

A. DECLARE that Defendant's policy and practice violates Mr. Williams's rights under the Fourth and Fifth Amendments to the U.S. Constitution;

B. ENJOIN Defendant, his employees, agents, successors and assigns, and all persons acting in concert with him, from continuing to enforce against Mr. Williams the USMS's manual search policy of probing pretrial detainees' testicles and inside their buttocks, through their underwear;

C. ENJOIN Defendant, his employees, agents, successors and assigns, and all persons acting in concert with him, from continuing to jam fingers into Mr. Williams's anus and grabbing his testicles;

D. AWARD Plaintiffs their costs and reasonable attorneys' fees in this action; and

E. GRANT such other and further relief as to the Court appears just and proper.

March 18, 2022                                                      Respectfully submitted,

                                                                    /s/ *Tara Patel*
                                                                    Tara Patel (D.C. Bar No. 1616930)

Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
  of the District of Columbia
915 15th Street NW, Second Floor
Washington, DC 20005
(202) 457-0800
tpatel@acludc.org

*Attorneys for Plaintiffs*[1]

---

[1] Counsel wish to acknowledge the assistance of paralegals Elaine Stamp and Jada Collins in the preparation of this Complaint.